IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHARD LIEU, Ph.D.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| vs. | ) CASE NO. 5-15-cv-02269-MHH |
| | ) |
| **THE BOARD OF TRUSTEES OF** | ) |
| **UNIVERSITY OF ALABAMA, for and** | ) |
| **on behalf of THE UNIVERSITY OF** | ) |
| **ALABAMA IN HUNTSVILLE and** | ) |
| **DR. CHRISTINE CURTIS,** | ) |
| | ) |
| **Defendants.** | ) |

**BRIEF IN SUPPORT OF MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

COMES NOW, Richard Lieu, Ph.D., Plaintiff and files his Brief in Support of Motion for Leave to File Second Amended Complaint and, in support thereof, states as follows:

**A. Background Information**

On January 24, 2018, Plaintiff filed his Motion to File Second Amended Complaint with the draft Complaint attached. On February 1, 2018, this Court held a telephone conference regarding the Motion. During the telephone conference, the Court instructed counsel for the Plaintiff to file a brief arguing why the proposed amendment to the Complaint would not be "futile" based on the expiration of the

1

statute of limitations.  In support of Plaintiff's Motion, Plaintiff offers the following:

## B. Operative Procedural History and Facts

As set out in the Plaintiff's First Amended Complaint, while Chair of the University Physics Department, Dr. Lieu recruited a Chinese citizen, named Ally Bizhu Jiang Ph.D., to fill a lecturer's position. Ms. Jiang is a Chinese citizen and at the time had already distinguished herself as a standout physics student at the Tsinghua University in Beijing, one of the finest physics universities in the world. She was selected by the Physics Department's search committee as the top candidate for the job and her hiring was approved by a vote of the Department. (Doc. 8, ¶ 16)

However, before Dr. Jiang could begin teaching, UAH administration failed to petition for her work visa in time for her to commence work by the start date stated in her contract. As a result, she did not have a work visa by the time classes began, and Dean Christopher withdrew her offer after attributing fault to Dr. Jiang for not showing to work on time. (Doc. 8, ¶ 17).

Dr. Lieu went to Dean Christopher and contested the decision to withdraw Ms. Jiang's offer.  (Doc. 8, ¶ 18).

Soon thereafter, Dr. Lieu's first complaint about the issue of Ms. Jiang's job loss, namely on October 16, 2014, Provost Christine Curtis sent Dr. Lieu an e-mail on which she copied the University's President, Robert Altenkirch, Ph.D., and Dean Christopher. This e-mail articulated University policy that it will "not hire anyone

from overseas. We [the University] have sufficient talent in the United States to fill lecturer positions." (Doc. 8, ¶ 19).

After receiving this e-mail, Dr. Lieu continued to complain to Dean Christopher and Provost Curtis regarding the University's failure to hire Ms. Jiang and its apparently-new policy to hire only those born in the United States to fill its lecturers' positions. (Doc. 8, ¶ 20).

On January 21, 2015, Dean Christopher and Provost Curtis removed Dr. Lieu from the Chair position after less than a year and a half of service and well before the natural termination of his four-year contract. Dean Christopher and Provost Curtis took this action without following the procedures for such an action stipulated in the Faculty Handbook. (Doc. 8, ¶ 21).

Dr. Lieu was not aware that Dr. Robert Altenkirch played any role at all in the decision to remove him from his position as Chair and did not name him in the original Complaint.  The actual Memorandum he received removing him from his position omitted any reference to Dr. Robert Altenkirch.  The Memorandum was from Dean Christopher and stated he was taking the action with the concurrence of Dr. Curtis.  Any role played by Dr. Altenkirch was concealed from the Plaintiff at the time of his demotion, and thereafter until this lawsuit had been pending for twenty-three months.[1]

---

[1] This allegation will be included in the Plaintiff's Amended Complaint in the event this Court elects to allow the amendment.

3

Dr. Lieu was promptly replaced by a Caucasian who was appointed as chair without a vote of the faculty.  (Doc. 8, ¶ 22).

On April 3, 2015, Plaintiff filed a Charge of Discrimination with the EEOC alleging violation of Title VII of the Civil Rights Act of 1964.  In that Charge, the Plaintiff specifically stated that he was basing his claims of discrimination, in significant part, on the content of an email he had received from Provost Christine Curtis stating that "UAH Huntsville will "not hire anyone from overseas."  (Doc. 8, Ex. A).

At no time, in response to the Plaintiff's EEOC Charge, did the Defendant UAH indicate that Dr. Robert Altenkirch actually initiated the policy himself as President of the University and instructed Dr. Curtis to that effect.  At all times, in response to the Plaintiff's claims, UAH has attributed this statement and implementation of this policy to Dr. Curtis alone.  Other than copying Dr. Altenkirch on this very significant email, his role in coming up with this policy or in demoting Dr. Lieu was actively concealed from Dr. Lieu, and through the pending of this litigation, Dr. Lieu's counsel.

Plaintiff filed the above-styled action on December 15, 2015, alleging claims related to race discrimination against the University of Alabama in Huntsville and Dr. Christine Curtis.  Dr. Altenkirch was not sued personally as a Defendant because UAH and Dr. Curtis successfully concealed his role in the Plaintiff's termination.

On January 8, 2016, the University of Alabama In Huntsville filed its Motion to Dismiss and Dr. Christine Curtis filed her Motion to Dismiss on January 22, 2016. At no point in these Motions did Dr. Curtis raise the defense that Dr. Altenkirch initiated the discriminatory policy at issue.  Rather than beginning discovery in the cases, the Defendants filed a series of Motions to Dismiss that delayed substantive discovery and the Plaintiff's ability to learn about Dr. Altenkirch's role in implementing the policy and demoting the Plaintiff. (Docs. 4 & 5).

On June 17, 2016, Plaintiff filed his First Amended Complaint against The Board of Trustees of the University of Alabama In Huntsville (the "Board") and Dr. Christine Curtis.

On July 8, 2016, Defendants again filed Motions to Dismiss, further delaying discovery, and Plaintiff filed his responses on November 1, 2016.  A hearing on Defendants' Motions was held on November 2, 2016.

On November 4, 2016, this Court entered an Order denying the Board's Motion to Dismiss.  The Board filed its Answer to Plaintiff's First Amended Complaint on December 21, 2016.  Dr. Christine Curtis' Motion to Dismiss remained pending.

On June 19, 2017, this Court entered an Order granting in part, and denying in part, Dr. Curtis' Motion to Dismiss.  The Court dismissed Plaintiff's § 1983 retaliation claim against Dr. Curtis and allowed Plaintiff's § 1983 discrimination

5

claim against her to proceed.

In this Court's June 19th Order and Memorandum Opinion allowing the Plaintiff's § 1983 discrimination to proceed, the Court based its decision, at least in part, on the existence of an email sent by Dr. Christine Curtis in which she stated that "the university 'would not hire anyone form overseas" because the school had "sufficient talent in the United States to fill lecturer positions." (Doc. 21, p. 9-10). The Court held that the existence of this email, as well as other allegations set forth the Plaintiff's Complaint, "plausibly suggest that Dr. Curtis discriminated against Dr. Lieu because of his race, national origin, and/or color" (Doc. 21, p. 9). Again, Dr. Curtis and her counsel had successfully concealed the fact that Dr. Altenkirch initiated the discriminatory policy at issue

After the Board's Motion to Dismiss was denied in November of 2016, almost **one year after suit was filed** on December 15, 2015, the Board and Plaintiff proceeded with filing a Report of the Parties' Planning Meeting and parties began exchanging discovery.

Approximately nine (9) months ago, on April 4, 2017, the Board served their Initial Disclosures. Nothing was produced as part of the Initial Disclosures to indicate that Dr. Altenkirch played any role at all in the Plaintiff's demotion. That is, the email in question remained hidden along with other emails that show his involvement.

On March 17, 2017, the Plaintiff served his First Requests for Production and Interrogatories on the Board of Directors. On May 25, 2017, the Board provided **2,242 pages of documents** in response to the Requests for Production. Notably missing from this production were **any** emails or other documents regarding the decision to demote the Plaintiff on which the Plaintiff was not copied.

On August 22, 2017, Plaintiff propounded First Interrogatories and Requests for Production to Defendant Dr. Christine Curtis. Dr. Curtis filed her answer to Plaintiff's First Amended Complaint on September 25, 2017. Both she and the Board are represented by the same counsel.

About four (4) months ago, on September 29, 2017, Dr. Christine Curtis provided her responses to Plaintiff's First Interrogatories and Requests for Production. In her response to each Request for Production, Defendant Curtis responded that "All documents responsive to this request have already been produced to Plaintiff in responses to the Request for Production sent to The Board of Trustees of The University of Alabama."

On October 27, 2017, Plaintiff propounded a Second Request for Production to the Board Defendant.

Six months after their initial disclosures, on **November 28, 2017**, the Board produced an additional **1,183** pages of documents. Buried in this set of documents, bates stamped 2243 – 3425, the Board produced, for the first time, internal emails

7

exchanged between Dr. Curtis and Dr. Altenkirch that reveal some portion of his role as continuously critical of Dr. Lieu, and that Dr. Curtis had email exchanges with Dr. Altenkirch regarding Dr. Lieu's protected activities. **Dr. Lieu was never copied.**

For example, buried in this production in documents bates stamped 2243-2245 is a chain of emails between Dr. Curtis and Dr. Altenkirch wherein they are discussing, on January 16, 2015, days before his demotion on January 25, 2015, Dr. Lieu's continued requests that Dean Sundar reconsider and offer Dr. Jiang the lecturer position. This email helps prove that Dr. Curtis reported all of this to Dr. Altenkirch to keep him informed and requested a phone call with him to discuss Dr. Lieu further. There are other, similar emails produced for the first time in this set of documents but *not* the email

On December 15, 2017, the Board provided additional documents in response to December 1, 2017 correspondence sent by undersigned counsel requesting additional documents.

Because the Defendants had represented that all discoverable documents had been produced, undersigned counsel and counsel for Defendants scheduled Party depositions (initially set for early December) for the week of January 15, 2018, including the Rule 30(b)(6) Representative's deposition of the Board of Directors of UAH.

8

Three days before the depositions were set to occur, on January 12, 2018, counsel for the Board and Dr. Curtis provided an additional string of emails that **had never before been produced throughout the two years this case had been pending.** This string of emails is directly relevant, discoverable, never included in Initial Disclosures, and responsive to the initial discovery requests propounded to UAH on March 7, 2017.

The final email in this string is an October 15, 2014, email from Robert Altenkirch to Defendant Curtis regarding Plaintiff, his position as Director of the Physics Department, and the lecturer position denied to Ms. Aly Zhiang. In that email Dr. Altenkirch directs Dr. Christine Curtis as follows: "It should also be made clear that we aren't going to hire a lecturer from overseas…The[sic] should be plenty of local talent from which to choose." This email from Dr. Altenkirch uses the same language as the statement made in Dr. Christine Curtis' October 16, 2014 email to Plaintiff that this Court found to be evidence that "plausibly suggests" Dr. Curtis discriminated against the Plaintiff.

In this same vein, this email makes it clear that Dr. Altenkirch **actively participated** in discrimination against the Plaintiff and should also be a party defendant under Plaintiff's claim that he was discriminated against in violation of § 1983. Until documents were produced by UAH on November 25, 2016, the Plaintiff was unaware, and UAH had concealed from the Plaintiff that Dr. Robert Altenkirch

played any role at all in his demotion. Until January 12, 2018, the Board actively concealed the existence of Dr. Altenkirch's role in discriminating against the Plaintiff by directing the Provost to inform him that UAH would not "hire lecturers from overseas."

Plaintiff's cause of action against Dr. Altenkirch for his own violation of 42 U.S.C. § 1983 did not even accrue until he became aware of Dr. Altenkirch's personal role in his demotion. Also, because the existence of Plaintiff's direct cause of action against Dr. Altenkirch was deliberately concealed from him as described in detail above beginning at the time of his demotion in January of 2015, the statute of limitations applicable to this independent cause of action has been tolled under ALA. CODE § 6-2-3 (1975) due to the Board's active concealment that a cause of action did, indeed, exist against Dr. Robert Altenkirch based on his personal conduct. Twelve days after first learning of Dr. Altenkirch's actions, Plaintiff moved to add him as a party.

### C. Legal Argument

The Plaintiff did not know or **even have reason to know** that Dr. Altenkirch discriminated against him directly by participating in the decision to demote him or that he had implemented the policy and directed Dr. Curtis to inform him that UAH would not "hire anyone from overseas," and this information was actively concealed from him. As a result, his current cause of action against Dr, Altenkirch is not futile

and is timely for two reasons: 1) under federal law, his cause of action against Dr. Altenkirch had not yet accrued until he became aware of what he did; and 2) any statute of limitations was tolled by the Board's and Dr. Curtis' concealment of Dr. Altenkirch's role in Dr. Lieu's demotion.

> i. **Dr. Lieu's cause of action against Dr. Altenkirch did not accrue under federal law until he became aware of the operative facts or that Dr. Altenkirch had personally harmed him until the email dated October 15, 2014 was produced on January 12, 2018.**

The cause of action the Plaintiff seeks to add is an additional cause of action under 42 U.S.C. § 1983 against another party, Robert Altenkirch. Because 42 U.S.C. § 1983 does not contain its own statute of limitations, the statute of limitations is provided by Alabama law. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-4 (U.S. May 19, 1980) (holding statute of limitations for cases under 42 U.S.C. § 1983 is provided by state law); *McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008) (Alabama law provides the statute of limitations under 42 U.S.C. § 1983). The Eleventh Circuit has held that, even though Alabama law provides the applicable statute of limitations, accrual of a claim under § 1983 is governed by federal law. *Mullinax v. McElhenney*, 817 F.2d 711, 715-16 (11th Cir. 1987).

In 1983 cases, "the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id*. Thus, "Section 1983 actions do not accrue until (1) the plaintiff knows or has reason to know that he has been injured

11

or 2) until the plaintiff is aware or should have been aware who has inflicted the injury." *Id.*

In this case, Dr. Lieu clearly did not know that Dr. Altenkirch played a pivotal role in his discriminatory demotion and in implementing the policy that UAH would not hire a lecturer "from overseas" until the email between Dr. Altenkirch and Dr. Curtis was disclosed during delayed discovery on January 12, 2018. At the earliest, Dr. Lieu became aware that Dr. Altenkirch played any role at all in is demotion in November of 2017, when emails between Dr. Altenkirch and Dr. Curtis were first produced to Plaintiff's counsel. Therefore, an amended complaint filed in February of 2018 is properly timely under the 2-year statute of limitations.

Under federal precedent, the fact that Dr. Lieu had no idea that Dr. Altenkirch played any role in the alleged discriminatory conduct is pivotal to determining when the statute of limitations began to run. *Mullinex,* 817 F.2d at 717 (holding that, in a 1983 claim, because the plaintiff had no knowledge of, or reason to know, of a particular officer's involvement in a false arrest, her statute of limitations did not accrue until she became aware (or reasonably should have become aware) of his involvement); *Hunter v. Miller*, 278 Fed. Appx. 887 (11th Cir 2008) (reversing dismissal of 1983 Complaint because there were facts pled that could support that the cause of action actually accrued during the limitations period under the federal standard - the plaintiff knew or had reason to know both (1) that he has been injured,

and (2) who has inflicted the injury within the limitations period); *Calhoun v. Alabama Alcoholic Beverage Control Bd.*, 705 F.2d 422 (11th Cir. 1983) (holding cause of action for racial discrimination for denial of liquor license accrued when plaintiffs discovered liquor license was granted to people of another race and not when license was denied).

Dr. Lieu's independent cause of action against Dr. Altenkirch under 42 U.S.C § 1983 therefore did not even accrue until, at the earliest, November of 2017 and is therefore timely if filed in February of 2018.

> **ii.   The Statue of Limitations for Dr. Lieu's cause of action against Dr. Altenkirch was tolled by Alabama law until he became aware of the operative facts that were actively concealed by the Board and Dr. Curtis.**

Federal Rule of Civil Procedure Rule 15(c)1(a) allows an amendment to a Complaint to "relate back to the original Complaint in the event he law that provides the applicable statute of limitations allows relation back." Furthermore, because, as set forth above, Alabama law provides the statute of limitations for § 1983 claims, its tolling provisions apply in federal actions. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-5 (U.S. May 19, 1980).

Under Alabama law, ALA. CODE § 6-2-3 (1975) provides that:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute the action.

The Alabama Supreme Court has held that this statute applies not only to causes of action for fraud, but to fraudulent concealment of the existence of tort claims. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224-5 (Ala. 2010). If the plaintiff sufficiently alleges the fraudulent concealment of the claims, the savings clause of ALA. CODE § 6-2-3 applies to non-fraud claims and a complaint should not be dismissed on statute of limitations grounds unless it is clear on the face if the complaint that the tolling provisions do not apply. *Id.* at 225-6.

In this case, in both the Motion to Amend and Second Amended Complaint, Dr. Lieu sets out in detail how he discovered an independent cause of action against Dr. Altenkirch under Section 1983, and that the Defendants actively concealed from him the facts giving rise to this cause of action until January 12, 2018, the date on which his email was ultimately produced in discovery. Such allegations are sufficient to survive a Motion to Dismiss based on statutes of limitations because the Defendants' fraudulent concealment of this cause of action tolls any applicable two-year statute of limitations. *Hinds* at 227 (holding complaint sufficient that alleged: 1) time and circumstance of investors' discovery of the cause of action; 2) the facts and circumstances around the concealment; and 3) what prevented the investors from discovering the facts surrounding their injury); *see also Dodd v. Consol. Forest Prods.*, 192 So. 3d 409 (Ala. Civ. App. 2015) (plaintiffs sufficiently alleged that defendant's ongoing misrepresentation that earned profits were being invested back

into the company sufficient to survive a motion to dismiss based on statute of limitations even if ultimately reliance on that representation might not be found reasonable).

### D. Conclusion

Because the Plaintiff can plead sufficient facts to support that 1) the statute of limitations on Dr. Lieu's 1983 claim against Dr. Altenkirch did not accrue until, at the earliest, November of 2017, and/or 2) the statute of limitations was tolled due to the fraudulent misrepresentations and suppression by the Defendants of the facts surrounding his claim, amending the Plaintiff's Complaint to include this cause of action would not be futile due to the passing of the statute of limitations.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order granting him leave to file the Second Amended Complaint attached as Exhibit A to his Motion for Leave to File Second Amended Complaint.

Respectfully submitted this the 12th day of February, 2018.

          s/ Teri Ryder Mastando
          Teri Ryder Mastando (ASB-4507-E53T)
          Eric J. Artrip (ASB-9673-I68E)
          MASTANDO & ARTRIP, LLC
          301 Washington Street, Suite 302
          Huntsville, Alabama 35801
          Phone: (256) 532-2222
          Fax: (256) 513-7489
          teri@mastandoartrip.com
          artrip@mastandoartrip.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this the 12th day of February, 2018, electronically filed the foregoing with the Clerk of the Court and have served a copy of the foregoing upon the following by electronic service, by facsimile or by placing a copy of same in the United States mail, postage prepaid and properly addressed.

Elizabeth Hamrick, Esq.  
John O. Cates, Esq.  
Office of Counsel  
UNIVERSITY OF ALABAMA SYSTEM  
247 Shelbie King Hall  
301 Sparkman Drive  
Huntsville, AL 35899

            s/ Teri Ryder Mastando  
            Teri Ryder Mastando